**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Daniel D. Domenico**

Civil Action No. 1:26-cv-00530-DDD-KAS

ALEKSEJS JEFREMOVS a/k/a Armen Bagdayan,

> Petitioner,

v.

JUAN BALTAZAR, in his official capacity as Warden of the ICE
    Denver Contract Detention Facility;
GEORGE VALDEZ, in his official capacity as Denver Field Office
    Director of ICE Enforcement and Removal Operations;
MARKWAYNE MULLIN, in his official capacity as Secretary of
    Homeland Security;
TODD BLANCHE, in his official capacity as Acting U.S. Attorney
    General,

> Respondents.[1]

---

**ORDER GRANTING IN PART WRIT OF HABEAS CORPUS**

---

Petitioner Aleksejs Jefremovs seeks a writ of habeas corpus directing his release from immigration detention. Doc. 1. For the following reasons, (1) the petitioner's habeas application is granted in part, and the respondents must provide him with an informal interview pursuant to 8 C.F.R. § 241.4(l)(1) within one week of this Order or else release him; and (2) the respondents' motion to vacate the Court's prior order not to remove the petitioner from the District of Colorado or the United States, Doc. 18, is granted.

---

[1]    To the extent that any of the original respondents has ceased to hold office during the pendency of this action, that party's successor "is automatically substituted as a party," and "any misnomer not affecting the parties' substantial rights must be disregarded." Fed. R. Civ. P. 25(d).

## BACKGROUND[2]

The petitioner is forty-eight years old and was born in the former Soviet Union. Doc. 1 at 2, 4, 7. According to him, "[o]nce that country ceased to exist, he became stateless, for though he was born in the territory of what is now the Republic of Latvia, he is not a citizen of that nation." *Id.*; Doc. 19 at 2; *see also* Doc. 16-1 (Latvian "Alien's Passport"). According to the respondents, the petitioner is a citizen of Latvia. Doc. 11-1 at 2. The petitioner entered the United States over twenty-five years ago on a J-1 visa as part of an international exchange program. Doc. 1 at 2, 7; Doc. 19 at 2. He has remained in the United States since that time, and he is now married to a lawful permanent resident and has two U.S.-citizen children. Doc. 1 at 2, 7, 8.

In October 2002, the petitioner filed a Form I-130 application for asylum and withholding of removal using the name Armen Bagdayan and claiming to be a native and citizen of Azerbaijan. Doc. 11-1 at 2; Doc. 1 at 2, 7; Doc. 19 at 2. On December 10, 2002, the U.S. Immigration and Naturalization Service issued a Notice to Appear, initiating removal proceedings against Armen Bagdayan pursuant to 8 U.S.C. § 1229a. Doc. 11-1 at 2; Doc. 1 at 7; Doc. 11-2 at 2. On May 15, 2003, the petitioner appeared before an Immigration Judge and admitted the allegations in the Notice to Appear, including the allegation that he is a native and citizen of Azerbaijan, and conceded his inadmissibility as charged. Doc. 11-1 at 2; Doc. 11-2 at 3. On May 4, 2005, the petitioner failed to appear for a hearing in immigration court, and the IJ ordered him removed to Azerbaijan in absentia. Doc. 11-1 at 2-3; Doc. 1 at 2, 8; Doc. 19 at 2; Doc. 1-1; Doc. 11-2 at 3. At some point thereafter, the petitioner

---

[2]    In this Order, pinpoint citations to the record use the blue page number appended by the Court's Electronic Case Filing system at the top of each page, which may differ from a document's internal pagination.

filed an application for adjustment to lawful permanent resident status with U.S. Citizenship and Immigration Services, but the application was processed under a different A-number than his removal proceedings. Doc. 11-1 at 3.

On May 13, 2015, the petitioner was convicted of Driving Under the Influence and sentenced to nine months of probation. *Id.*; Doc. 1 at 2, 8. On September 25, 2015, U.S. Immigration and Customs Enforcement arrested the petitioner pursuant to his final order of removal, but it then released him on an Order of Supervision in light of his pending application for adjustment of status. Doc. 11-1 at 3. The respondents state that "[t]o the best of [their] knowledge and belief, USCIS [ultimately] denied the adjustment application." *Id.* at 3 n.1.

Between 2015 and 2017, the petitioner (under his true name, Aleksejs Jefremovs) filed three separate motions to reopen his removal proceedings and rescind the order of removal that was issued in absentia. Doc. 11-1 at 3; Doc. 1 at 8. According to the respondents, in those motions "Petitioner claimed to be stateless yet provided a copy of a Latvian travel document in his name." Doc. 11-1 at 3. All three motions were denied, and the petitioner did not appeal any of those denials to the Board of Immigration Appeals. *Id.*; Doc. 1 at 8; Doc. 19 at 2; Doc. 11-2 (IJ's order finding petitioner's "fraudulent conduct in the past as it pertains to this process should not serve as a basis to reopen this matter at this time"). On March 16, 2017, the Latvian embassy issued a letter to the United States stating that the petitioner "is an alien (non-citizen) of the Republic of Latvia," and he "cannot be issued a new passport of citizen of the Republic of Latvia." Doc. 1-3 at 2; Doc. 1 at 3, 9; Doc. 19 at 3. In 2018, the petitioner's wife petitioned to have him classified as the spouse of a lawful permanent resident. Doc. 1 at 9. On December 13, 2018, ICE issued another Order of Supervision, stating that

"[b]ecause the agency has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed on supervision and permitted to be at large," subject to conditions. Doc. 1-2 at 2; Doc. 1 at 2, 8. The petitioner fully complied with all conditions. Doc. 1 at 2, 8-9; Doc. 19 at 3-4.

In 2024, his wife's petition to have him classified as the spouse of a lawful permanent resident was denied "because, owing to [his] medical problems, he could not attend the required interview, and his request to reschedule the interview was unavailing." *Id.* at 9. On November 27, 2025, ICE again arrested the petitioner pursuant to his final order of removal. Doc. 11-1 at 3; Doc. 1 at 2, 9. The respondents state that ICE revoked the petitioner's Order of Supervision "because the purpose of release had been served and it is appropriate to enforce the order of removal." Doc. 11-1 at 4. But the petitioner was not informed "either in writing or orally, why his order of supervision was revoked or who authorized the revocation." Doc. 1 at 2, 9; *see also* Doc. 19 at 4. On February 19, 2026, nearly three months after the petitioner was arrested and a week after he filed the instant habeas application, the respondents served the petitioner with a written Notice of Revocation of Release. Doc. 11-1 at 5. He has not been provided with an informal interview to respond to the reasons for revocation stated in that notice as required by regulation. Doc. 19 at 4 (citing 8 C.F.R. § 241.4(l)(1)).

The petitioner has remained in detention since November 2025 pursuant to 8 U.S.C. § 1231. *Id.* at 4. ICE provided the petitioner with an application for a Latvian travel document, but he refused to complete the application. *Id.*; Doc. 1 at 9. On January 29, 2026, ICE submitted a travel document request to the Latvian embassy on the petitioner's behalf. Doc. 11-1 at 4. On February 2, 2026, a representative from the embassy informed the respondents that the name Armen Bagdayan is not

found in the Latvian Registry, but the name Aleksejs Jefremovs is, and the embassy would proceed with a travel document for the petitioner under his true name, Aleksejs Jefremovs. *Id.* at 4-5. According to the respondents' counsel, in April 2026 ICE received confirmation that Latvia will issue the petitioner a final travel document, which will allow the respondents to effectuate his order of removal and end his detention. Doc. 18 at 3. Latvia is prepared to issue the travel document "if and when" this Court vacates its preliminary order not to remove the petitioner from the District of Colorado or the United States. Doc. 18 at 3 n.2; *see also* Doc. 5 at 2 ("Respondents **SHALL NOT REMOVE** Petitioner from the District of Colorado or the United States unless or until this Court or the Tenth Circuit Court of Appeals vacates this Order.").

The petitioner contends that (1) his continued detention violates the Immigration and Nationality Act because there is no significant likelihood that he will be removed in the reasonably foreseeable future, and (2) his Order of Supervision was revoked in violation of his due-process rights because he was not provided any notice, explanation, or opportunity to respond to the reasons for its revocation, and no factual circumstances changed since it issued that would justify revoking his release. Doc. 1 at 3, 5-7, 11-12; Doc. 16. He seeks a writ of habeas corpus directing his immediate release. Doc. 1 at 13. The respondents move to vacate the order not to remove the petitioner so that they may proceed with obtaining a Latvian travel document. Doc. 18.

## LEGAL STANDARD

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997).

Habeas corpus relief may be granted if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Federal courts have habeas jurisdiction to hear statutory and constitutional challenges to immigration detention. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001); *Sierra v. INS*, 258 F.3d 1213, 1217-18 (10th Cir. 2001).

## DISCUSSION

### I. The petitioner's continued detention under Section 1231 is lawful because his removal is reasonably foreseeable.

The petitioner first argues that he should be released because his detention is not authorized by the INA. Doc. 1 at 11-12.

If a noncitizen is ordered removed, he becomes subject to mandatory detention under 8 U.S.C. § 1231 during the ninety-day "removal period," which begins when the order of removal becomes "administratively final."[3] *See* 8 U.S.C. § 1231(a)(1)(B)(i); *Johnson v. Guzman Chavez*, 594 U.S. 523, 528, 533-34 (2021). The parties here dispute when the petitioner's removal period began and whether that period may be extended or restarted pursuant to Section 1231(a)(1)(C) due to the petitioner's refusal to complete an application for a Latvian travel document. *See* Doc. 1 at 8, 11; Doc. 11 at 3 n.1, 5-6; Doc. 16 at 3-5; Doc. 19 at 2-3. I need not resolve those disputes, though, because even assuming the petitioner is now subject to discretionary detention "beyond the removal period" under Section 1231(a)(6), his continued detention is lawful.

Post-removal-period detention may not be indefinite and may continue only so long as removal is reasonably foreseeable. *Zadvydas*, 533

---

[3]    The other two triggers for the beginning of the removal period—a court order lifting a stay and release from non-immigration detention or confinement—are not at issue here. *See* 8 U.S.C. § 1231(a)(1)(B)(ii)-(iii).

U.S. at 699; *accord Clark v. Martinez*, 543 U.S. 371, 377-86 (2005); *Morales-Fernandez v. INS*, 418 U.S. 1116, 1123-24 (10th Cir. 2005). After six months of detention, if a noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must either "respond with evidence sufficient to rebut that showing," *Zadvydas*, 533 U.S. at 701, "or release the alien," *Guzman Chavez*, 594 U.S. at 529. *See also* 8 C.F.R. § 241.13.

The petitioner has now been detained for over seven months. And he may have satisfied his initial burden by submitting evidence that the Latvian embassy previously stated he could not be issued a citizen's passport. Doc. 1-3. But the respondents have responded with evidence sufficient to show that the petitioner is likely to be removed in the reasonably foreseeable future.

In February 2026, ICE Deportation Officer Irma Quinones submitted a declaration stating that a representative from the Latvian embassy had communicated to ICE that "the name Aleksejs Jefremovs is found in the Latvian Registry, and the embassy will proceed with the travel document for Aleksejs Jefremovs," and "[b]ased on this communication with the Latvian Embassy, ICE believes that a travel document for Petitioner will be issued." Doc. 1-1 at 4-5. And in April 2026, the respondents filed a motion to vacate the Court's preliminary order not to remove the petitioner, stating that "ICE [has] received confirmation that Latvia will issue Petitioner a final travel document," and "the travel document will be issued if and when this Court vacates the do-not-remove-or-transfer-order." Doc. 18 at 3 & n.2; *see also* Fed. R. Civ. P. 11(b) ("By presenting to the court a . . . written motion . . . an attorney . . . certifies that . . . the factual contentions have evidentiary support . . . ."). The respondents have thus "ma[de] legitimate progress towards removal," *Fadwa v. Lyons*, No. 25-cv-03660-PAB, 2025 WL 3525026, at *6

(D. Colo. Dec. 9, 2025), and it appears that the only impediment to the petitioner's removal is the pendency of this case.

The petitioner argues that it is unclear whether the respondents can lawfully remove him to Latvia because his removal order designates Azerbaijan as the country of removal, and the respondents may not have followed the sequence specified in Section 1231 when selecting Latvia as his removal destination. Doc. 19 at 9-10. Section 1231(b)(2) sets out the procedure by which the respondents must select a noncitizen's destination after removal is ordered, and it provides four consecutive removal commands:

(1) a noncitizen may designate one country to which he wants to be removed, but that designation may be disregarded if the government of that country is not willing to accept him or the government does not inform the Attorney General within thirty days of inquiry whether it will accept him, 8 U.S.C. § 1231(b)(2)(A)-(C);

(2) if a noncitizen is not removed to the country designated by him, he must be removed to "a country of which the alien is a subject, national, or citizen," unless the government of that country will not accept him or does not inform the Attorney General within thirty days of inquiry whether it will accept him, 8 U.S.C. § 1231(b)(2)(D);

(3) if a noncitizen is not removed to a country designated by him or of which he is a national or citizen, then he must be removed to a country to which he has any of six specified lesser connections, among which is "[t]he country in which the alien's birthplace is located when the alien is ordered removed," 8 U.S.C. § 1231(b)(2)(E)(i)-(vi); and

(4) if it is "impracticable, inadvisable, or impossible to remove" the noncitizen to all of the above countries, he must be removed to

another country whose government will accept him, 8 U.S.C. § 1231(b)(2)(E)(vii).

*See also Jama v. ICE*, 543 U.S. 335, 338-41 (2005).

The petitioner argues that because "it does not appear that ICE ever attempted to obtain a travel document for Mr. Jefremovs, either under his own name or the name Armen Bagdayan, from the government of Azerbaijan," "the government has . . . violated the statutory scheme prescribing the order of countries to which it may attempt to remove him." Doc. 19 at 9-10. But even though the IJ ordered the petitioner removed to Azerbaijan, the petitioner does not assert that Azerbaijan is the country *he* has designated under Section 1231(b)(2)(A)(i) as the "country to which [he] wants to be removed." Indeed, he "admits that he has no connection" to Azerbaijan, and notes that he has previously sought to reopen his immigration proceedings to amend the designated country of removal (though those efforts were unsuccessful). Doc. 19 at 10. It is thus far from clear that the respondents were obligated to attempt to remove the petitioner to Azerbaijan before one of the other countries specified in Section 1231(b)(2)(D)-(E). And if the petitioner is indeed "stateless" as he asserts, Doc. 1 at 2, and there is no "country of which [he] is a subject, national, or citizen" under Section 1231(b)(2)(D), then Latvia is a permissible country of removal under Section 1231(b)(2)(E)(vi), because it is the country in which his birthplace is located. *See* Doc. 1 at 2 (petitioner "was born in the territory of what is now the Republic of Latvia").

Because on the current record Latvia appears to be an appropriate country of removal, and the petitioner's removal to that country is reasonably foreseeable as discussed above, his continued detention is authorized under Section 1231(a)(6) and *Zadvydas. Cf. Lawrence v. McElroy,* 112 F. App'x 805, 805-06 (2d Cir. 2004) (district court correctly

- 9 -

denied habeas petition where respondents indicated that travel documents were available for petitioner and his removal could be effected expeditiously after resolution of the petition); *Hosan v. INS*, No. 3:CV-06-482, 2006 WL 2520616, at \*5 (M.D. Pa. Aug. 29, 2006) (removal reasonably foreseeable where respondents submitted "evidence that a request for [a] travel document was submitted to Bangladesh, and that this country has now issued a travel document for the repatriation of Petitioner").

## II. Release is not the appropriate remedy for the respondents' procedural violations.

The petitioner next argues that he should be released because the respondents violated applicable regulations when they revoked his Order of Supervision and re-detained him. Doc. 1 at 6-7, 12; Doc. 16 at 2-3, 5-6, 7; Doc. 19 at 4, 6-8.

If the government releases a noncitizen after the removal period, as it initially did in this case, that release may be revoked "in the exercise of discretion when, in the opinion of" the Executive Associate Commissioner or a district director:

> (i) The purposes of release have been served;
>
> (ii) The alien violates any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
>
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(l)(2). The noncitizen must be "notified of the reasons for revocation of his or her release" and then must be "afforded an initial informal interview promptly after his or her return to . . . custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1).

Though the respondents did not initially notify the petitioner of the reasons for revocation of his release, they have now represented that his Order of Supervision was revoked "because the purpose of release had been served and it is appropriate to enforce the order of removal," and that they would serve him with a formal Notice of Revocation of Release the day after they filed their show-cause response. Doc. 11-1 at 4. The respondents have thus cured their initial failure to provide notice. *Cf. Depelian v. Baltazar,* No. 1:25-cv-03765-SKC-TPO, slip op. at 9-11 (D. Colo. Jan. 20, 2026), ECF No. 18 (respondents violated procedural due process by re-detaining petitioner without following procedure for terminating humanitarian parole, but no habeas remedy available because they cured violation post-detention). It does appear, though, that they have not provided the petitioner with the informal interview required by 8 C.F.R. § 241.4(l)(1). The appropriate remedy for that violation is not release, but rather to ensure that the petitioner receives the process to which is entitled under the regulation. *Rustami v. Noem*, No. 25-3160-JWL, 2025 WL 3760744, at *4 (D. Kan. Dec. 30, 2025) (appropriate remedy was substitute process, not release, where petitioner was not provided with informal interview); *see also Guerra v. Bondi*, No. CIV-25-1240-G, 2026 WL 114258, at *8 (W.D. Okla. Jan. 15, 2026) (ordering respondents to either provide petitioner with notice and custody review required by 8 C.F.R. § 241.4(l)(3) or release him); *cf., e.g.*, *Santillan Quioroz v. Mullin*, — F.4th —, No. 26-6019, 2026 WL 1876709, at *17 n.13 (10th Cir. June 30, 2026) ("Because [the petitioner] can properly be subject to detention under § 1226(a)," "the district court shall order the Government to . . . either provide him with a bond hearing or else release him."). Accordingly, I will grant the petitioner's habeas application in part and order that he be provided with an informal interview pursuant to 8 C.F.R. § 241.4(l)(1).

## CONCLUSION

It is **ORDERED** that:

The Court's order to show cause, Doc. 5 at 1, is **DISCHARGED**, and the petitioner's request for a writ of habeas corpus ordering his immediate release is **DENIED**;

The Petition for Writ of Habeas Corpus, **Doc. 1**, is **GRANTED IN PART** to the extent that within **one week** of this Order, the respondents must provide the petitioner with an informal interview pursuant to 8 C.F.R. § 241.4(l)(1) or else release him, and file a status report stating the results of the interview or the date of the petitioner's release if no interview was conducted;

Respondents' Motion to Vacate Order Directing Respondents Not to Remove Petitioner from the District of Colorado (ECF No. 5), **Doc. 18**, is **GRANTED**, and the Court's order not to remove the petitioner from the District of Colorado or the United States, Doc. 5 at 2, is **VACATED**, effective upon the respondents' filing of the status report confirming the petitioner has been provided an informal interview or released;

The respondents must file a status report within five business days of the petitioner's removal, or within one month of this Order if the petitioner has not been removed by that time; and

Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court is **DIRECTED** to: (1) substitute George Valdez, in his official capacity as Denver Field Office Director of ICE Enforcement and Removal Operations, in place of Respondent Robert Hagan; (2) substitute Markwayne Mullin, in his official capacity as Secretary of Homeland Security, in place of Respondent Kristi Noem; and (2) substitute Todd Blanche, in

- 12 -

his official capacity as Acting U.S. Attorney General, in place of Re-
spondent Pamela Jo Bondi.

DATED: July 10, 2026          BY THE COURT:

                                    _____

                                    Daniel D. Domenico
                                    Chief United States District Judge